UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EV TRANSPORTATION
SERVICES, INC.

        Plaintiff,

v.

MICHIGAN INCOME AND
PRINCIPAL-PROTECTED
GROWTH FUND, LP and
ADVANCED TECHNOLOGY
AUTOMOTIVE COMPANY LLC,

        Defendants,

and

MICHIGAN INCOME
PRINCIPAL-PROTECTED
GROWTH FUND, LP

        Counter-Plaintiff,

EV TRANSPORTATION SERVICES, INC., Counter-Defendant,
EFLEETS TECHNOLOGY CORPORATION, Third Party Defendant, and
ADVANCED TECHNOLOGY AUTOMOTIVE COMPANY, LLC, Cross
Defendant.

Civil Case No. 22-cv-10950
Honorable Linda V. Parker

_____/

## OPINION AND ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT EVTS' MOTION FOR PARTIAL DISMISSAL (ECF NO. 18)

On May 4, 2022, EV Transportation Services, Inc. ("EVTS") filed a

Complaint against Michigan Income and Principal-Protected Growth Fund, LP

("MIPP") and Advanced Technology Automotive Company, LLC ("ATAC") seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that EVTS is the clean title owner of certain registered trademarks and related intellectual property. (ECF No.1 at Pg ID 1.)  On August 8, 2022, MIPP filed a Counter-Complaint against EVTS seeking declaratory relief as it pertains to the same registered trademarks and related intellectual property, as well as asserting claims of unjust enrichment and abuse of process.  (ECF No. 9 at Pg ID 82-84.)  Presently before the Court is Plaintiff/Counter-Defendant EVTS' motion for partial dismissal of MIPP's Counter-Complaint.  (ECF No. 18.)  EVTS seeks to dismiss MIPP's claims for unjust enrichment and abuse of process.  (ECF No. 18 at Pg ID 189.)  The motion is fully briefed.  (ECF Nos. 22 and 25.)  For the reasons stated hereafter, the Court grants Plaintiff/Counter-Defendant's motion for partial dismissal.

## I.  Legal Standard for a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*.  (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc*., 108 F.3d

86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.

1989)).  A court that considers such matters must first convert the motion to

dismiss to one for summary judgment.  *See* Fed. R. Civ. P 12(d).  However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the

[c]omplaint and any exhibits attached thereto, public records, items appearing in

the record of the case and exhibits attached to [the] defendant's motion to dismiss,

so long as they are referred to in the [c]omplaint and are central to the claims

contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430

(6th Cir. 2008).  The court may take judicial notice only "of facts which are not

subject to reasonable dispute." *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir.

2008) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

## I. Factual Background

MIPP is a Michigan Limited Partnership, with its principal place of business

in Grosse Pointe Farms, Michigan.  (ECF No. 9 ¶ 1, Pg ID 72.)  EVTS is a

Delaware corporation whose principal place of business is in Massachusetts.  (*Id*. ¶

2, Pg ID 73.)  This dispute arises from both EVTS and MIPP's business dealings

with ATAC, a Michigan Limited Liability Company in the electric utility vehicle

business.  (*Id*. ¶¶ 3 and 8, Pg ID 73.)  At issue is the ownership of the "Firefly"

trademark and related intellectual property (hereinafter referred to as the "IP").

(*Id*. ¶ 13, Pg ID 74.)

The parties do not dispute that the IP was created by a company called Good Earth, and that on or about March 24, 2015, the IP was assigned by Good Earth to eFleets Technology Corporation ("eFleets"), a Georgia corporation.  (*Id*. ¶ 10, Pg ID 73); *see also* (ECF No. 18 at Pg ID 201).  The parties do however, dispute what happened next as it pertains to the IP.

MIPP maintains that in July 2015, eFleets and ATAC entered into a Joint Venture Agreement ("JVA") where eFleets assigned the IP to ATAC (among other assets) in exchange for membership interest in ATAC.  (ECF No. 9 ¶¶ 14-17, Pg ID 75-76.)  Conversely, EVTS maintains eFleets and ATAC merely negotiated the terms of a JVA, but never actually agreed upon final and complete terms due to ATAC's failure to perform certain essential terms of the JVA.  (ECF No. 18 at Pg ID 201.)  However, EVTS asserts eFleets permitted ATAC to utilize the IP for a short period of time, before eventually ending the business relationship and rescinding permission to use the IP.  (*Id*. at Pg ID 202.)

Regardless, on April 22, 2016—before ownership of the IP was in dispute— EVTS and ATAC entered into a distribution agreement, where ATAC would manufacture vehicles for EVTS using the IP.  (*Id*. at Pg ID 203.)  At the time, it was EVTS's understanding that ATAC owned the IP.  (*Id*. at Pg ID 204.)  During the course of their distribution agreement, EVTS paid ATAC $227,948 for vehicles it never tendered.  (*Id*. at Pg ID 203.)  Consequently, on July 20, 2018, EVTS filed

suit against ATAC in the Oakland County Circuit Court to recover the monies, and on June 4, 2019, it was granted its relief in full. (*Id.*); *see also* (ECF No. 9 ¶ 29, Pg ID 78). Shortly thereafter, EVTS filed a motion to appoint a receiver to prevent ATAC from disposing of the IP which was "ATAC's only known asset." (ECF No. 9 ¶¶ 30-32.) On August 21, 2019, the Oakland County Circuit Court entered an order appointing a receiver. (*Id.* ¶ 34.) On September 4, 2019, the Oakland County Circuit Court entered an amended order appointing a receiver. (*Id.* ¶ 36, Pg Id 79.)

Meanwhile, in late 2015 or early 2016, MIPP made loans to ATAC in part in reliance that ATAC owned the IP. (*Id.* ¶ 18, Pg ID 76.) Per the loan agreement, MIPP asserts it was granted a security interest in all of ATAC's assets to secure the repayment of the debt. (*Id.* ¶ 25, Pg ID 77.) ATAC eventually defaulted on the loan, and MIPP claims it is currently owed more than one million dollars plus interest and attorney's fees, which continue to increase. (*Id.* ¶¶ 22-23, Pg ID 77.) In the midst of moving forward with an Article 9 foreclosure sale of its collateral on ATAC's debt, MIPP learned about the receivership orders pertaining to ATAC and the IP. (*Id.* ¶ 40, Pg ID 79.) As such, on September 16, 2019, MIPP filed a motion to vacate both receiver orders. (*Id.* ¶ 42, Pg ID 80.) On November 27, 2019, the Oakland County Circuit Court entered a stipulated order amending

certain provisions of the previous orders.  (*Id*. ¶ 43.)  The stipulated order, in

relevant part, states that:

> (a) the Receiver shall not, without written approval from
>     MIPP, sell, administer or be compensated from any
>     Assets in which MIPP holds a valid Security Interest;
>     and
> (b) MIPP shall be entitled to the proceeds of sale of the
>     Assets, up to the amount of the indebtedness and
>     secured by any valid Security Interest."

(*Id*. ¶ 45.)

In light of this order, EVTS asserts it conducted its own investigations and

allegedly discovered that MIPP never had a security interest in the IP, ATAC never

owned the IP, and MIPP's claimed debt from ATAC was grossly inflated such that

it could not enforce a security interest.  (ECF No. 18 at Pg ID 204.)  EVTS'

investigations also led it to learn that eFleets allegedly still owned the IP.  (*Id*.)

Thereafter, on August 6, 2020, EVTS entered into an agreement with eFleets for

the sale of the IP for $85,000.  (ECF No. 9 ¶ 46, Pg ID 80.)

Importantly, MIPP points out that eFleets voluntarily dissolved its

corporation on October 11, 2019.  (*Id*. ¶ 48, Pg ID 81.)  Per the Counter-

Complaint, the Articles of Dissolution state, in relevant part, that "adequate

provision of all remaining property and assets of the corporation have been made

therefor."  (*Id*.)  As such, MIPP maintains eFleets did not own and therefore did

not have the requisite authority to transfer the IP to EVTS.  (ECF No. 9 ¶ 49.)

Moreover, MIPP states that EVTS used the IP long before the August 6, 2020

agreement. (ECF No. 9 ¶ 47.) Summarily, there is a dispute between MIPP and EVTS as to whether eFleets assigned the IP to ATAC, and therefore, who has the rights to the IP.

EVTS filed its Complaint seeking a declaratory judgment that EVTS is the clean title owner to the IP and therefore, has not infringed on any enforceable trademark rights of MIPP or ATAC. (ECF No. 1 at Pg ID 1.) In response, MIPP filed a Counter-Complaint seeking both declaratory relief and an amount in excess of $75,000. (*See generally* ECF No. 9.) To elaborate, in the first count of MIPP's Counter-Complaint, MIPP seeks a declaratory judgment that the IP is owned by ATAC, MIPP has a security interest in all of ATAC's assets, EVTS did not acquire any intellectual property from eFleets in 2020, and EVTS has been wrongfully using the IP. (*Id*. at Pg ID 83.) Count two of MIPP's Counter-Complaint is a claim of unjust enrichment and count three is abuse of process. (*Id*. at Pg ID 83, 84.) EVTS filed the instant motion seeking dismissal of counts two and three. (ECF No. 18.)

## II. Law and Analysis

### a. Unjust Enrichment

Under Michigan Law, an unjust enrichment claim requires the "unjust retention of money or benefits which in justice and equity belong to another*."* *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 Mich. 2010). A plaintiff alleging

unjust enrichment must establish two elements: "(1) the receipt of a benefit by the other party from the complaining party, and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of New York Mellon*, 831 N.W.2d 897, 905 (Mich. Ct. App. 2012). "If these elements are satisfied, '[a] contract will be implied in law to prevent unjust enrichment.'" *Sinclair v. Meisner*, No. 22-1264, 2022 WL 18034473, at *4 (6th Cir. Dec. 29, 2022) (quoting *AFT Mich. v. Michigan*, 846 N.W.2d 583, 660 (Mich. Ct. App. 2014). However, a contract will only be implied " . . . if there is no express contract covering the same subject matter." *Reid v. Bank of Am., N.A.,* No. 18-CV-12099, 2019 WL 355655, at *4 (E.D. Mich. Jan. 29, 2019) (citing *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003). "The Michigan Supreme Court has emphasized that implying a contract-in-law to prevent unjust enrichment 'should be approached with some caution.'" *Miller v. MSX-IBS Holding, Inc.,* No. 16-CV-10596, 2016 WL 4138238, at *7 (E.D. Mich. Aug. 4, 2016) (citing *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991).

Moreover, "[c]ustomarily, Michigan courts only employ the doctrine of unjust enrichment in cases where the defendant directly receives a benefit from the plaintiff." *State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.,* No. 19-10835, 2021 WL 4060983, at *3 (E.D. Mich. Sept. 7, 2021) (quoting *Schechner*

*v. Whirlpool Corp.*, 237 F.Supp.3d 601, 618 (E.D. Mich. 2017); *Smith v. Glenmark Generics, Inc., USA,* No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (unpublished) (holding that " . . . caselaw does not specifically state that the benefit must be received *directly* from the plaintiff, but these decisions make it clear that it must"). However, in *Kammer Asphalt Paving Co. V. E. China Twp. Sch.*, 504 N.W. 2d 635, 641 (Mich. 1993), "the Michigan Supreme Court held that an indirect benefit may fulfill the first requirement of an unjust enrichment claim when the defendant and plaintiff had some sort of direct interaction." *State Farm Mut. Auto. Ins. Co.* 2021 WL 4060983 at *3 (internal quotations omitted).

Therefore, in order to survive the instant motion to dismiss, MIPP must have alleged sufficient facts to establish on its face that MIPP conferred a benefit upon EVTS—the retention of which caused an inequity—or that EVTS engaged in misleading conduct that led to MIPP's purported loss.

In its Counter-Complaint, MIPP alleges that EVTS' unauthorized use of the IP conferred a benefit upon EVTS, the retention of which resulted in an inequity to MIPP. (ECF No. 9 ¶¶ 61-62, Pg ID 83.) More specifically, MIPP alleges EVTS'

> . . . use of ATAC's property without the payment of consideration has caused ATAC to not receive assets from EV[TS], including the collection of accounts receivable from EV[TS], which assets would be MIPP's collateral and available to pay down the ATAC debt [owed to MIPP].

(ECF No. 9 ¶ 63, Pg ID 84.)  As such, MIPP alleges EVTS was unjustly enriched.

In response, EVTS maintains first that MIPP did not confer a benefit upon EVTS such that EVTS is now liable to MIPP for unjust enrichment.  (ECF No. 18 at Pg ID 207.)  Second, that there is no inequity where EVTS paid for the IP.  (ECF No. 18 at Pg ID 209.)  And third, that MIPP lacks standing to bring this claim. (ECF No. 18 at Pg ID 210.)  The Court will not opine as to EVTS's latter two arguments because the first satisfies the standard necessary to grant its motion to dismiss as to this count.

The Court finds that MIPP has not alleged facts sufficient to satisfy the first element of an unjust enrichment claim.  Plainly, MIPP has not alleged that EVTS received a benefit from MIPP either directly or indirectly.  Rather, MIPP alleges that EVTS' unauthorized use of the IP allowed it to unfairly profit in the marketplace, thus hindering its ability to collect the debt it is owed by ATAC.  This does not satisfy the first element of an unjust enrichment claim.  *See e.g., Mertik Maxitrol GMBH & Co. KG v. Honeywell Techs. SARL*, No. 10-12257, 2012 WL 748304, at \*9 (E.D. Mich. Mar. 6, 2012) (holding that "Plaintiffs have not alleged that [d]efendant received a benefit *from Plaintiffs*; rather, they allege that [d]efendant's unauthorized sales allowed it to unfairly profit in the marketplace"); *Romantics v. Activision Pub., Inc.*, 574 F. Supp. 2d 758, 771 (E.D. Mich. 2008) (holding that the plaintiffs did not establish that the defendants received a benefit

*from* them, even if their use was unauthorized, which it was not).  Moreover, ". . .
where a third person benefits from a contract entered into between two other
persons, in the absence of some misleading act by the third person, the mere failure
of performance by one of the contracting parties does not give rise to a right of
restitution against the third person." *Karaus,* 300 Mich. App. at 906.  MIPP has
not alleged that EVTS misled it such that EVTS would now be liable for unjust
enrichment.  As such, MIPP has failed to state a claim for unjust enrichment.

### b.  Abuse of Process

Under Michigan law, "a cause of action for abuse of process requires the
plaintiff to show that the defendant used a proper legal procedure for a purpose
collateral to its intended use, and there must be some corroborating act that
demonstrates the ulterior purpose." *Dassault Systemes, SA v. Childress*, 828 F.
App'x 229, 236 (6th Cir. 2020).  Thus, to properly allege an abuse of process claim
in Michigan, a plaintiff must plead "(1) an ulterior purpose and (2) an act in the use
of process which is improper in the regular prosecution of the proceeding."
*Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981).  Regarding the first
element, "the plaintiff must allege more than an improper motive in properly
obtaining process.  This ulterior purpose must be more than harassment,
defamation, exposure to excessive litigation costs, or even coercion to discontinue
business." *Boladian v. Thennisch,* No. 324737, 2016 WL 1445314, at *4 (Mich.

Ct. App. Apr. 12, 2016) (unpublished) (internal citations and quotations omitted).

Importantly, " . . . there is no liability where the defendant has done nothing more

than carry out the process to its authorized conclusion, even though with bad

intentions." *Hardiman v. McKeen*, No. 19-12949, 2020 WL 1821025, at *3 (E.D.

Mich. Apr. 10, 2020) (quoting *Three Lakes Ass'n v. Whiting*, 255 N.W.2d 686, 690

(Mich. Ct. App. 1977)).

> In its Counter-Complaint, MIPP alleges that,

>> [d]espite predicating the entire receivership upon the fact
>> that ATAC owned the Intellectual Property, and despite
>> causing the State Court to enter orders prohibiting MIPP
>> from foreclosing its security interest in the Intellectual
>> Property, on or about August 6, 2020, EV[TS] entered into
>> an agreement with EFLEETS, which provided for the
>> acquisition by EV[TS] of the Intellectual Property from
>> EFLEETS in exchange for $85,000.

(ECF No. 9 ¶ 46, Pg ID 80.)  As such, MIPP alleges that EVTS's insistence upon

the continuation of the receivership was an abuse of process.  (ECF No. 9 ¶ 66, Pg

ID 84.)  More specifically, MIPP alleges that EVTS' ulterior purpose to continuing

the receivership was to " . . . frustrate MIPP's ability to foreclose on its collateral

and to exercise control over the very property which the receivership was created

to protect."  (ECF No. 9 ¶ 68, Pg ID 85.)  To be clear, MIPP does not assert that

the initiation of the receivership was improper, it was EVTS' " . . . ulterior purpose

for keeping the receivership in place, misus[ing] the receivership process in order

to perpetuate its wrongful use of the IP[,] and to prevent MIPP from enforcing its

rights as a secured creditor" that MIPP asserts is the abuse of process.  (ECF No.

22 at Pg ID 262.)

In response, EVTS asserts that it did not "keep" the receivership in place, the

Oakland County Circuit Court did.  (ECF No. 25 at Pg ID 340.)  EVTS maintains

that "[i]f MIPP had a legal basis to dissolve the receivership, Judge Warren would

have done so when MIPP asked him to, but he did not."  (ECF No. 25 at Pg ID

340.)  Moreover, EVTS argues it is contradictory for MIPP to assert that there was

"no proper purpose to continue the receivership because ATAC did not own the

IP," yet the basis of this lawsuit is to establish ownership over the IP between the

two entities.  (ECF No. 25 at Pg ID 341.)

Accepting MIPP's allegations that EVTS insisted upon the receivership

remaining in effect in order " . . . to frustrate MIPP's ability to foreclose on its

collateral and to exercise control over the very property which the receivership was

created to protect" as true, ECF No. 9 ¶ 68, Pg ID 85, " . . . there is no liability

where the defendant has done nothing more than carry out the process to its

authorized conclusion, even though with bad intentions."  *Hardiman,* 2020 WL

1821025 at *3 (quoting *Three Lakes Ass'n,* 255 N.W.2d 686 at 689).  "The purpose

of appointing a receiver is to preserve property and to dispose of it under the order

of the court."  *Reed v. Reed,* 693 N.W.2d 825, 844 (Mich. 2005) (citing *Cohen v.

Cohen*, 335 N.W.2d 661, 665 (Mich. Ct. App. 1983)).  The alleged ulterior

purpose—to frustrate MIPP's ability to foreclose on its collateral—is not outside the scope of the purpose of a receivership order, which is to preserve property so that a court may properly dispose of it.  The state court's receivership process, as alleged, " . . . has only been used to accomplish the result for which it was created." S*age Int'l, Ltd. 556* F. Supp. at 389.  As such, MIPP has failed to state a claim for abuse of process.

### III.    Conclusion

For the aforementioned reasons, the Court finds that MIPP has not adequately pled claims for unjust enrichment and abuse of process.

Accordingly,

**IT IS ORDERED** that Plaintiff/Counter-Defendant EVTS' Motion for Partial Dismissal as to Counts II and III of Defendant/Counter-Plaintiff MIPP's Counter-Complaint is **GRANTED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: February 15, 2023