UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EV TRANSPORTATION SERVICES, INC., <br>     Plaintiff, <br> v. <br><br> MICHIGAN INCOME AND PRINCIPAL-PROTECTED GROWTH FUND, LP, *et al.*, <br>     Defendants. <br> _____/ | Case No. 22-10950 <br><br> Jonathan J.C. Grey <br> United States District Judge <br><br> Curtis Ivy, Jr. <br> United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO DISMISS (ECF No. 71)**

**I.    PROCEDURAL HISTORY**

Plaintiff EV Transportation Services, Inc. ("EVTS") filed this matter on May 4, 2022 against Defendants Michigan Income and Principal-Protected Growth Fund, LP ("MIPP") and Advanced Technology Automotive Company, LLC ("ATAC"). (ECF No. 1). ATAC filed an answer to the complaint with affirmative defenses and a counterclaim against EVTS on November 4, 2022. (ECF Nos. 24, 27, 28). ATAC filed a third-party complaint on the same day. (ECF No. 29). Plaintiff filed a previous motion to partially dismiss ATAC's counterclaim, which was granted on February 15, 2023. (ECF Nos. 31, 44). Plaintiff now files another

motion to dismiss the rest of ATAC's counterclaim. (ECF No. 71). The motion is fully briefed. (ECF Nos. 72, 75).

This case was referred to the undersigned for all pretrial matters. (ECF No. 57).

## II.   BACKGROUND

In 2011, the United States Patent and Trademark Office ("USPTO") published the mark "FIREFLY" in favor of Good Earth Energy Conversation, Inc. ("Good Earth") as its owner. (ECF No. 1, PageID.4). It then published the mark "FIREFLY ESV" to Good Earth. (*Id.*). In 2015, Good Earth recorded an assignment of both Firefly Marks to DFW-USA, Inc. d/b/a eFleets Technology Corporation ("eFleets"), and eFleets was the continuous holder of the marks until August 21, 2020. (*Id.* at PageID.4-5). On or about July 1, 2017 and October 16, 2018, eFleets filed combined declarations of use and incontestability under Sections 8 and 15 of the Trademark Act for the Firefly marks. (*Id.*).

In July 2015, eFleets and ATAC negotiated a Joint Venture Agreement which called for eFleets to assign the Firefly marks to ATAC "in exchange for obtaining certain membership interests in ATAC." (*Id.*). Once that occurred, eFleets was to execute an assignment and bill of sale of the trademarks to ATAC. (*Id.*). But eFleets and ATAC never agreed upon final and complete terms and never finalized an agreement because ATAC did not provide certain necessary

information and essential terms for the agreement. (*Id.* at PageID.5-6). Even so, and for a short time, eFleets permitted ATAC to use the Firefly marks even though they had not executed an assignment or bill of sale. (*Id.*). Later, eFleets and ATAC began to market vehicles under the mark "TECFLEET." (*Id.*). After this, ATAC "committed numerous breaches of its understandings with eFleets . . . including but not limiting to failing to make required payments to eFleets, exceeding borrowing limits and otherwise failing to perform." (*Id.*). Thereby, eFleets "withdrew any permissions it had given ATAC to utilize the Firefly Marks, terminated all understandings pursuant to the proposed . . . agreement." (*Id.* at PageID.6-7). ATAC was notified "continuously and at all times" that the agreement was incomplete and that it was not the owner of the marks. (*Id.*).

On or about December 31, 2014, Arctaris, as lender, entered into a series of loan security agreements with ATAC. (*Id.*). The agreements specified that ATAC did not own any intellectual property. (*Id.* at PageID.12). EVTS and ATAC then entered into an Exclusive Distribution Agreement in which EVTS would purchase and ATAC would manufacture the FireFly ESV vehicle. (*Id.*). EVTS was made to believe that ATAC was the owner of the Firefly marks. (*Id.*). EVTS paid ATAC $227,948.00 for Firefly vehicles that ATAC did not deliver on June 4, 2019. (*Id.* at PageID.13).

3

EVTS then commenced an action against ATAC in the Oakland County Circuit Court.  (*Id.* at PageID.13-14).  In the state court suit, EVTS had asserted breach of contract, statutory and common law conversion, and unjust enrichment, arguing that there was a valid and enforceable agreement between EVTS and ATAC and ATAC breached the contract between the parties by failing to produce FireFly vehicles and/or return EVTS's funds.  (ECF No. 71-2, PageID.839).  Its statutory and common law conversion claims argued that ATAC failed to produce and/or deliver the FireFly vehicles even though EVTS paid $227,948.00 for their delivery.  (*Id.*).  Finally, the unjust enrichment claim stated that EVTS paid ATAC for the delivery of the FireFly vehicles, ATAC failed to produce the vehicles, and it would be unjust and/or inequitable to allow ATAC to retain the $227,948 without producing any vehicles.  (*Id.* at PageID.840).  Plaintiff was granted a $227,948.00 judgment against ATAC, and the Oakland County Court issued a restraining order preventing the disposition of any of ATAC's assets.  John Polderman, Esq., was appointed as a Receiver over ATAC.  (ECF No. 1, PageID.13).  Arctaris appeared post-judgment and claimed to have a security interest in all of ATAC's assets as a result of a claimed debt, and stated that it holds a valid and enforceable security interest in the Firefly Marks, superior to any claim by EVTS.  (*Id.* at PageID.14).

4

In 2020, EVTS engaged in discussions with eFleets about the sale of the Firefly marks. (*Id.*). Arctaris also made inquiries with eFleets about purchasing the Firefly marks. (*Id.*). eFleets instead decided to do business with EVTS rather than Arctaris, and entered into an Intellectual Property Purchase Agreement in which it conveyed the Firefly Marks and related intellectual property to EVTS, and finalized and executed an assignment. (*Id.* at PageID.15).

It maintained and used the intellectual property it bought from eFleets. (*Id.* at PageID.2). MIPP, the first named Defendant, claimed to have "superior ownership rights to said intellectual property by virtue of a security interest it claims to hold over various assets of ATAC" and has "asserted in pleadings before the Oakland County Circuit Court that EVTS is infringing upon ATAC's trademark rights." (*Id.*).

Plaintiff alleges that ATAC never owned the intellectual property because ATAC "never completed and/or defaulted on an agreement to purchase such intellectual property pursuant to 15 U.S.C. § 1060(4)," and because "certain documentary evidence" proves that ATAC was never the owner of, nor did it grant any security interest to the intellectual property to MIPP. (*Id.*). Plaintiff claims it is entitled to a declaratory judgment declaring that it is the sole record owner of the intellectual property it bought from eFleets with clean title, free of any claimed liens or encumbrances. (*Id.* at PageID.3).

5

ATAC then filed a counterclaim. (ECF No. 28). In it, it seeks declaratory judgment stating that the intellectual property is owned by ATAC, EVTS did not acquire the intellectual property from eFleets in 2020, and EVTS has been wrongfully using the intellectual property that belongs to ATAC. (*Id.* at PageID.362). It also asserts claims of statutory and common law conversion, claiming that EVTS's use of the intellectual property was a distinct act of dominion wrongfully exerted over ATAC's personal property. (*Id.* at PageID.362-363). It also brings a claim of unjust enrichment, arguing that EVTS's unauthorized use of the intellectual property conferred a benefit upon EV, resulting in an inequity to ATAC. (*Id.* at PageID.364).

Plaintiff now moves to dismiss the countercomplaint. (ECF No. 71). In particular, it argues that the Receiver, John Polderman, Esq., is the real party in interest to ATAC's claims pursuant to Fed. R. Civ. P. 17, that ATAC lacks Article III standing because it has not suffered an injury, and the Court lacks jurisdiction over ATAC's Counterclaim under the *Rooker-Feldman* doctrine. (*Id.* at PageID.810).

The undersigned heard argument on the motion on September 26, 2024. For the reasons below, the motion to dismiss should be **GRANTED**.

### III.   ANALYSIS

A.   Party in Interest

EVTS argues that the Receiver is the real party in interest to ATAC's claims pursuant to Fed. R. Civ. P. 17. (ECF No. 71, PageID.822). EVTS further argues that Fed. R. Civ. P. 17 "requires that 'an action must be prosecuted in the name of the real party in interest,'" and that "the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law." (*Id.* at PageID.823).

In its response, ATAC argues that it is the real party in interest in this matter. (ECF No. 72, PageID.874-75). It claims that the Receiver Order empowered, "but did not obligate, the Receiver to sue for, collect, and receive the assets of ATAC." (*Id.*). Because the Receiver "was notified of this action, [but] he opted not to participate, and declined to accept service," Defendant claims that it "retained the right to pursue legal action to protect its rights in the IP." (*Id.*).

In EVTS's reply, it claims that ATAC "is attempting to impute language into the Receivership orders that is not there – that should the Receiver choose not to pursue litigation, ATAC may do so." (ECF No. 75, PageID.1039-40).

Federal Rule of Civil Procedure 17(a)(1) states that "[a]n action must be prosecuted in the name of the real party in interest." Individuals who may sue in their own names without joining the person for whose benefit the action is brought include: (a) an executor; (b) an administrator; (c) a guardian; (d) a bailee; (e) a trustee of an express trust; (f) a party with whom or in whose name a contract has

been made for another's benefit; and (g) a party authorized by statute. Fed. R. Civ. P. 17(a)(1). "The 'real party in interest' is the person who possesses the right or interest to be enforced through litigation, and the purpose of the procedural rule that litigation must be prosecuted in the name of the real party in interest is to protect the defendant against a subsequent action by the party actually entitled to recover." *Crossing at Eagle Pond, LLC v. Lubrizol Corp.*, 346 F. Supp. 3d 1048 (E.D. Mich. 2018) (internal citation omitted).

"The primary purpose of a receiver is to preserve property and to dispose of it under the order of the court." *Band v. Livonia Assocs.*, 439 N.W. 2d 285, 290 (Mich. Ct. App. 1989). The court defines "the receiver's power and duties where they are not otherwise spelled out by law," and charges the receiver "with all of the estate, real and personal debts of the debtor as trustee for the benefit of the debtor, creditors and others interested." *Id.* (internal citations omitted).

The receiver "derives his authority from . . . the order of appointment and specific orders which the appointing court may thereafter make." *Id.* at 291 (quoting *Woodcliff v. Frechette*, 236 N.W. 790 (1931)). As ATAC states, the first amended order appointing the receiver says that the "Receiver shall be empowered, but not obligated to . . . Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings . . . necessary to preserve or

8

increase the assets . . . or to carry out the Receiver's duties." (ECF No. 28, PageID.384). That said, the order also states:

> [ATAC] and all other persons, creditors and entities be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of Defendant, the Receiver, receivership assets, or the Receiver's duly authorized agents acting in their capacities . . . Defendant and all other persons, creditors and entities . . . [are stayed from] commencing, prosecuting, litigating or enforcing any other suit, except that actions may be filed to toll any applicable statute of limitations."

(*Id.* at PageID.387). The order makes it clear that all parties are stayed from filing suit or taking action.

ATAC claims that the receiver need not pursue claims in any action but the creditors may, in the absence of the receiver, engage in the action. But this is not the case. The goal of the receiver is to "'stand in the shoes' of the entity in receivership, and thus the receiver can pursue claims that could be pursued by that entity." *Coppola v. Manning*, 2015 WL 7288050, at *4 (Mich. Ct. App. Nov. 17, 2015). "[W]hen a receiver has authority to sue on behalf of the receivership entity, the receiver is considered the real party in interest and he or she is permitted to initiate suit in his or her own name." *Id.* at *5 (citing *Stephenson v. Golden*, 276 N.W. 849 (Mich. 1937) and *McPherson v. Gregory*, 260 N.W. 767 (Mich. 1935)). The real party in interest in this matter, therefore, is the receiver and not ATAC.

9

Also, a receiver's duty "is not to litigate . . . between the parties, but . . . to preserve and care for the property and turn it over to the person who is ultimately decided to be entitled thereto." *Westgate v. Westgate*, 292 N.W. 569, 571 (Mich. 1940). Because the receiver here holds the property, it is undecided to whom the property is entitled, and ATAC itself is not a real party in interest. That the receiver did not litigate does not alter the fact that he remains the real party in interest. "A receiver is under no legal duty to perform legal services for the benefit of the estate committed to his charge." *Band*, 439 N.W. 2d at 293. In fact, "a receiver is not appointed as an agent of, or for the benefit of one party in particular; rather he or she is appointed 'to protect and benefit both parties equally.'" *Coppola*, 2015 WL 7288050, at *5 (internal citations omitted). ATAC is not the real party in interest in this matter.

B.  Standing

Next, EVTS argues that ATAC has not suffered an injury and therefore lacks Article III standing. (ECF No. 71, PageID.824). It claims that because ATAC has no property rights, it has not suffered an injury. (*Id.*). EVTS argues that unless ATAC can show that it is entitled to possession or ownership of the intellectual property, it does not have standing. (*Id.* at PageID.825). Because it states that "it is undisputed that ATAC's property is not its own and must be sold and distributed

10

pursuant to the State Court's Receiver order," ATAC cannot establish any injury. (*Id.*).

Article III standing requires that a party "suffered an injury in fact," caused by the opposing party, that "is redressable by a judicial decision." *Thomas v. TOMS King (Ohio), LLC*, 997 F.3d 629, 634 (6th Cir. 2021). "[T]he fundamental requirement is that claimants have at least a facially colorable property interest in the proceedings sufficient to satisfy Article III's 'case-or-controversy' requirement." *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 499 (6th Cir. 1998).

"A receiver holds the property coming into his hands by the same right and title as for the person whose property he is receiver." *Gray v. Lincoln Hous. Tr.*, 201 N.W. 489, 491 (Mich. 1924). "[T]he receiver succeeded to the rights of not only the debtor, but also the creditor . . . [and] assumed the power to enforce the rights which the creditors . . . might have enforced on their own behalf." *Liberte Cap. Grp. LLC v. Capwill*, 248 F. App'x 650, 669 (6th Cir. 2007) (J. Clay, dissenting) (citing *McGinness v. United States*, 90 F.3d 143, 144-45 (6th Cir. 1996)). While the receiver is in possession of the property, the property is being held in wait for determination on who properly owns the property. *Westgate*, 292 N.W. at 570 ("property in controversy is in the hands of a receiver and is to be held and disposed of by the receiver" and the duty of a receiver is "to control and

11

manage [property] for the persons or party who may be ultimately entitled thereto.").

Also, the amended receiver order says the receiver is "granted all powers . . . to control and liquidate" the assets at issue. The parties are also prevented from "interfere[ing] with the Receiver taking control, possession or management of the property subject to the receivership . . . or to interfere with the exclusive jurisdiction of this Court over the assets." (ECF No. 28, PageID.382-388).

ATAC's property rights have been granted to the Receiver. Because ATAC does not have a property interest in the matter at hand, as its property interest is in the hands of the Receiver, ATAC does not meet the fundamental requirement for standing, and ATAC therefore lacks standing to bring this claim. ATAC does not have a property interest sufficient to establish standing.

All property interests have been granted to the receiver for the intellectual property, therefore depriving ATAC from any standing to bring individual suits.

Given that ATAC lacks standing to bring the counterclaim and is not the real party in interest, the Court need not consider whether the *Rooker-Feldman* doctrine applies. Therefore, the motion to dismiss should be granted.

**IV.    RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that EVTS's motion to dismiss should be **GRANTED** and ATAC's counterclaim (ECF No. 28) be **DISMISSED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

| | |
|---|---|
| Date:  September 26, 2024. | <u>s/Curtis Ivy, Jr.</u><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |